## FIREMAN'S FUND INS. CO. v. LYON.
### (No. 1278.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 21, 1914. Rehearing Denied Dec. 10, 1914.)

1. INSURANCE (§ 665*)—FIRE POLICIES—ACTIONS—EVIDENCE.

In an action on a fire policy, providing that it should be void if the property insured remained vacant or unoccupied for 10 days, evidence *held* to show no waiver of the vacancy clause when insured was given permission to remove the building from one lot to another.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

2. INSURANCE (§ 387*) — FIRE INSURANCE — CONDITIONS—ESTOPPEL.

That a fire company allowed the holder of a policy, providing that it should be void in case the premises remained vacant for over 10 days, to remove the building from one lot to another, and after the removal notified the insured that the policy would again be in force, it not having been operative while the building was in transit, does not estop the insurer from relying on a breach of the vacancy clause.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1025; Dec. Dig. § 387.*]

Error to Hunt County Court; Geo. B. Hall, Judge.

Action by E. W. Lyon against the Fireman's Fund Insurance Company. There was a judgment for plaintiff, and defendant brings error. Reversed and rendered.

This suit is by defendant in error to recover on a fire insurance policy issued by the plaintiff in error upon a dwelling. The dwelling was destroyed by fire on September 13, 1911. The insurance company pleaded as a defense the breach of the following stipulation in the policy:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described shall be or become vacant or unoccupied and so remain for ten days."

The defendant in error replied by pleas of waiver of the provision as to occupancy and agreement to keep the policy in force by indorsement of proper permit, and estoppel from claiming a forfeiture by reason of the vacancy, and asked to have the policy reformed so as to cover the house in its vacant condition. There was a trial to a jury, and verdict for defendant in error.

The evidence establishes that S. R. Polk owned premises on West Lee street in Greenville, and situate thereon was a dwelling occupied by him. On October 22, 1910, the plaintiff in error, through its agent, issued to Polk a policy of insurance insuring the dwelling until October 22, 1911, in the sum of $900 against loss by fire "while occupied by owner and tenant as a dwelling." On July 19, 1911, E. W. Lyon, the defendant in error, became the owner of the house and lot by purchase from Polk, and on said date the policy of insurance was transferred to the ownership of E. W. Lyon with the consent of the insurance company indorsed thereon. At the time of the issuance of the policy, there was a lien upon the premises in favor of the bank at Detroit, Mich., and there was a loss payable clause in favor of the bank attached to the policy, and the policy was in the bank's possession from that date until after the dwelling was destroyed. Polk resided in the house after the sale of the premises and the transfer of the policy to Lyon, until about the 10th or 12th of August, 1911, at which time he moved out, and the house was vacant and unoccupied continuously from the day Polk moved out to and including the day it was burned. The defendant in error determined to move the house from West Lee street to the southeast corner of Wall and Washington streets, and immediately upon its being vacated by Mr. Polk went to see the agent of the insurance company and informed him with respect to moving the house, and asked him whether the insurance would be in force while the house was being removed, at the same time informing him that Polk had moved out and that it was then vacant. The agent informed defendant in error that under the policy the insurance would not cover the building during the time it was being moved from one location to another, but told defendant in error to notify him when he had placed the house in its new location and he "would put the insurance in force," meaning that he would authorize and cover the new locality by a provision to that effect. On August 31, 1911, when the house had been moved to its new location, the defendant in error informed the agent of the insurance company of the fact and stated to him that he "wanted the insurance put in force again," and the agent replied, "All right, that it would be attended to." Thereupon the agent sent his son to the premises for the purpose of obtaining the correct lo-

cation of the house. The son, after inspecting the location, at once returned to the office, and there was written, and subsequently indorsed on the policy, the following:

"Form No. 7¼. S. R. Polk (assigned to E. W. Lyon). Removal permit. $900.00 on the one-story, shingle-roof, frame building and additions attached thereto, including heating and lighting apparatus and all permanent fixtures, while occupied by tenant as a dwelling and situated as follows: On the S. E. corner Wall and Washington streets in Greenville. August 31, 1911. J. H. Van Amburg, Agent."

One copy of this permit was pasted in the agent's record book in his office, one copy was sent to the insurance company's home office, and one copy to the Detroit bank to be attached to the policy. The agent's son knew the house was vacant on August 31, 1911, but neither Van Amburg nor his son knew of the continued vacancy after that date. On August 31, 1911, there was written, and subsequently indorsed on the policy, form No. 72, reading:

"Report of Removal of Dwelling. Permission is hereby given to remove property insured· by this policy to —— story —— roof —— building, occupied for dwelling purposes, situated S. E. cor. Wall and Washington streets, Greenville, Texas, subject to all the written and printed conditions thereof, all liability in ·former location ceasing from this date. Rate —— increased to $1.12 per cent. Premium —— additional .30."

It appears that the fire hazard in the new locality was greater than in the former, and because of that fact the increased rate and premium were charged. The increased premium applied exclusively to the removal permit. The evidence is undisputed that the dwelling was vacant and unoccupied from August 31, 1911, the date of completed removal, to and including September 13, 1911, the date of loss by fire. The agent testified that there was no agreement or permit as to future vacancy or nonoccupation of the dwelling in its new location, and that no such permit was asked for nor given. We conclude that the condition in the policy as to vacancy and nonoccupation was not performed by defendant in error from August 31, 1911, the day of removal, to and including September 13, 1911, the day of the loss by fire, and that there was not a waiver, or intended waiver, of such condition of the policy, nor is the company estopped in point of fact from claiming a forfeiture by reason of the fact of vacancy from August 31st to and including September 13th.

Looney, Clark & Leddy, of Greenville, and Wm. Thompson and Jno. S. Patterson, both of Dallas, for plaintiff in error. Evans & Carpenter, of Greenville, for defendant in error.

LEVY, J. (after stating the facts as above). [1, 2] The policy of insurance upon which this suit was based contained the provision that:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if a building herein described shall be or become vacant or unoccupied and so remain for ten days."

And the record admits the fact that the dwelling covered by the policy remained vacant and unoccupied from the time it was ready for occupancy on August 31, 1911, to and including September 13, 1911, the day it was destroyed by fire. As it could not very well be asserted, in view of these conceded facts, that the policy was not terminated by its own terms of contract, a liability on the policy in favor of the insured could not be sustained unless, as claimed by the insured, there was sufficient proof to authorize a finding of fact by a jury that the condition in the policy was waived and the company estopped from taking advantage of it. The insurance company by proper assignment contends that there is no evidence showing, or upon which a legitimate inference could be formed, that it waived the condition, or upon which to predicate estoppel. In respect to this contention it appears from the evidence that the policy was issued and delivered in the first instance on October 22, 1910, to S. R. Polk, who at that time was the owner of the premises and building. The defendant in error subsequently purchased of Polk the lot and building, and this same policy of insurance thereon was assigned and transferred in writing to him on July 19, 1911. Polk occupied the dwelling at the time of the issuance of the policy and until about the 10th or 12th of August, 1911, at which time he moved out. The defendant in error decided to move the house from its then location on West Lee street, as set out in the policy, to another lot owned by him on the corner of Wall and Washington streets. Defendant in error testified:

"When we got ready· to move the house, I wasn't sure about the insurance. I went to see Mr. Van Amburg and told him I was going to move the house, and asked him about the moving, and he said when moving it the insurance would be at my risk, that is, off; but if I got it moved and set up he would put it on. I don't remember any talk about the occupancy at all. I told him I was going to move it and I wanted to be sure about the insurance, whether the insurance would be on and whether at my risk while it was being moved. He said during the time the house was being moved the insurance would be off, and when I got it moved and notified him he would put the insurance in force. About two weeks, maybe a little longer, from the time we commenced moving, until the house was set up, as soon as we got it set up, I notified Mr. Van Amburg that the house was up and I wanted the insurance put in force again, and he said all right that it would be attended to. About three or four days before the house burned, I met Mr. Van Amburg at Bell's hardware store, and told him I was very busy trying to gather my crop and was building a house and my mother was sick, and asked him if he had my insurance fixed up. He said he did. I told him I hadn't time to look after it, and he said he was taking care of it and to go on about my work and to depend on him, whenever I gave him my insurance he would keep up with it; and that was all the conversation I had with him until after the house burned."

Van Amburg was the local agent of the insurance company in Greenville. The agent testified that:

Defendant in error "gave me information in regard to moving the house from West Lee to Washington street location. I said to him, in substance, what I said to others, that during the time the house is moved from one place to another the insurance is not in force, but may be reinstated when the house is set on the new location. My best recollection is that I told him then to let me know when he got it set up. * * * On the morning of August 31st he came to me and said the house was in its new location, and wanted to know if the insurance was in force. We talked trying to locate the house. Neither he nor I nor my son knew the exact location—that is, the cross-street —and my son got a buggy and went and got the location. Mr. Lyon did not remain in my office until my son returned. When Mr. Lyon came to notify me that the house had been placed in the new location, I told him I would get the location and make the transfer, and I did do it, according to the attachment to the policy, removal permit. (The removal permit was attached in writing to the policy.) It is not the form used in case of a vacancy. * * * I never made a charge against Mr. Lyon for the privilege of permitting the house to remain vacant, and Mr. Lyon never paid me anything for that privilege. * * * Vacancy was not considered. It was a question of removal, and the question of vacancy was not mentioned, and he did not make any request for a vacancy permit. I never had any agreement or contract with Mr. Lyon at any time or place to look after his property and see whether it was vacant or not or occupied. Mr. Lyon, like a great many of my other customers, told me to keep his insurance in force. I did all that Mr. Lyon rquested me to do, and all that I agreed to do with Mr. Lyon in regard to this insurance. I never did tell Mr. Lyon that I would look after his property in regard to it becoming vacant, and try to keep the insurance in force by reason of the vacancy. Nothing was ever said about it."

It is quite true that it appears from this evidence that at the time the defendant in error went to see the agent to find out whether "the insurance would be off" while the house was being moved to the new locality, the agent said that "he would put the insurance in force again" when the house was removed and notice given him of that fact. But it is quite clear, also, that the parties had in view only this removal permit. And the removal permit authorizing a change of locality being actually indorsed on the policy on August 31, 1911, the date of removal, there was fully carried out the agreement of the agent to "put the insurance in force again." And the indorsing of the removal permit and change of location on the policy was perfectly consistent with the subsequent statements of the agent that he "had attended to it" and "made the transfer." Clearly, it seems to us, there is no evidence tending to show an agreement to change, modify, or alter the statement in the policy as to the vacancy and nonoccupation of the house, nor to extend the vacancy and nonoccupation beyond the original terms of the policy. It appears that the house was vacant, to the agent's knowledge, on the day the removal permit and change of location were indorsed on the policy. But the knowledge of vacancy

at that date would not produce the result of waiver or be sufficient for estoppel. Insurance Co. v. Chadwick, 13 Tex. Civ. App. 318, 35 S. W. 26; Ranspach v. Insurance Co., 109 Mich. 699, 67 N. W. 976; England v. Insurance Co., 81 Wis. 583, 51 N. W. 955, 29 Am. St. Rep. 917.

The cases of Assurance Co. v. Dunbar, 7 Tex. Civ. App. 418, 26 S. W. 628, and Short v. Home Ins. Co., 90 N. Y. 16, 43 Am. Rep. 138, cited by defendant in error in respect to the question of insuring vacant property, do not control the instant case. Here the dwelling was not insured in the first instance as vacant, as in those cases. Mr. Polk occupied it as a dwelling at the time of the issuance of the policy to him, and it was likewise occupied as a dwelling at the time the defendant in error had the policy transferred and assigned to him. This original policy remained in force between the insurance company and the defendant in error, with a modification only of the clause in the policy respecting the location of the dwelling insured. The dwelling being occupied at the time the insurance contract was made and the policy delivered, the terms of the policy with respect to continued occupation of the same would apply and govern the rights of the parties here unless waived, which as a fact was not done in the instant case.

The judgment is reversed and here rendered in favor of the plaintiff in error, and the costs of the trial court and of this appeal will be taxed against the defendant in error.